UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI

| | |
|---|---|
| DAVID S. LOWRY, CPA, LTD., an Ohio limited partnership, individually and on behalf of a class of similarly situated businesses and individuals<br><br>Plaintiffs<br><br>vs.<br><br>U.S. BANCORP., U.S. BANK, N.A.; THE PNC FINANCIAL SERVICES GROUP, INC, PNC BANK N.A.; HUNTINGTON BANCSHARES, INC., HUNTINGTON NATIONAL BANK; FIRST FINANCIAL BANCORP., FIRST FINANCIAL BANK; FIFTH THIRD BANCORP, FIFTH THIRD BANK; THE NORTH SIDE BANK & TRUST COMPANY; and; DOE LENDERS 1 to 4,975, inclusive<br><br>Defendants | Case No.<br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**<br><br>(1) **DECLARATORY RELIEF**<br><br>(2) **UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff David S. Lowry, CPA, LTD, brings this class action complaint on behalf of itself and those similarly situated (hereinafter "Plaintiffs") against Defendants U.S. Bancorp, U.S. Bank N.A.; The PNC Financial Services Group, Inc., PNC Bank N.A.; Huntington Bancshares, Inc., Huntington National Bank; First Financial Bancorp., First Financial Bank; Fifth Third Bancorp, Fifth Third Bank; The North Side Bank & Trust Company and DOE LENDERS 1 to 4,975, inclusive (hereinafter "Defendants") to stop Defendants' unlawful conduct and to obtain monies owed as a result of Defendants' conduct. For their class action complaint, Plaintiffs allege as follows based upon their personal knowledge and upon information and belief, including investigation conducted by their attorneys.

**PARTIES**

1. Plaintiff David S. Lowry, CPA, LTD. ("Lowry") is an Ohio limited partnership authorized to do business and doing business in the State of Ohio, with its place of business located at 9420 Towne Square Avenue, Suite 22, Blue Ash, Hamilton County, Ohio 45242. Lowry has been a licensed CPA in Ohio since approximately 1982 and Florida since approximately 2013.

2. At all relevant times, Defendant U.S. Bancorp is a Delaware corporation and the parent company of U.S. Bank., N.A. U.S. Bancorp is an American bank holding company that provides banking, investment, mortgage, trust and payment services to individuals, businesses, governmental entities, and other financial institutions. U.S. Bancorp is headquartered in Minneapolis, Minnesota. Through its subsidiaries, U.S. Bancorp conducts substantial business in this District.

3. At all relevant times, Defendant U.S. Bank N.A. ("US Bank") operates more than 3,000 banking offices and nearly 5,000 ATMS, and provides a comprehensive line of banking, brokerage, insurance, investment, mortgage, trust and payment-services products to consumers, businesses and institutions. US Bank is headquartered in Minneapolis, Minnesota, and conducts substantial business in this District.

4. At all relevant times, Defendant The PNC Financial Services Group, Inc. is a Pennsylvania corporation and the parent company of PNC Bank, N.A. The PNC Financial Services Group, Inc. is an American bank holding company and financial services corporation. The PNC Financial Services Group, Inc. is headquartered in Pittsburgh, Pennsylvania. Through its subsidiaries, The PNC Financial Services Group, Inc. conducts substantial business in this District.

5. At all relevant times, Defendant PNC Bank N.A. ("PNC") is a subsidiary of The PNC Financial Group, Inc. PNC is a bank that offers savings and checking

account, investment and financial services. PNC is headquartered in Pittsburgh, Pennsylvania and conducts substantial business in this District.

6.     At all relevant times, Defendant Huntington Bancshares, Inc. is a Maryland corporation and the parent company of Huntington National Bank. Huntington Bancshares, Inc. is a bank holding company with headquarters in Columbus, Ohio. Huntington Bancshares, Inc. conducts substantial business in this District.

7.     At all relevant times, Defendant Huntington National Bank ("HNB") is a subsidiary of Huntington Bancshares, Inc., HNB is a bank operating 920 banking offices within the Midwest. HNB is headquartered in Columbus, Ohio and conducts substantial business in this District.

8.     At all relevant times, Defendant First Financial Bancorp. is an Ohio corporation and the parent company of First Financial Bank. First Financial Bancorp. is a national commercial bank. First Financial Bancorp. is headquartered in Cincinnati, Ohio and conducts substantial business in this District through its subsidiaries.

9.     At all relevant times, Defendant First Financial Bank ("First") is a subsidiary of First Financial Bancorp. First provides banking and financial services through four lines of business: commercial and private banking, retail banking, investment commercial real estate, and commercial finance. First is headquartered in Cincinnati, Ohio and conducts substantial business in this District.

10.    At all relevant times, Defendant Fifth Third Bancorp is an Ohio corporation and parent company of Fifth Third Bank. Fifth Third Bancorp is a banking holding company. Fifth Third Bancorp is headquartered in Cincinnati, Ohio and conducts substantial business in this District.

11.    At all relevant times, Defendant Fifth Third Bank ("Fifth Third") is a subsidiary of Fifth Third Bancorp. Fifth Third is a full-service bank offering a wide

selection of checking and savings accounts, CD's, investments and insurance products and loans. Fifth Third is headquartered in Cincinnati, Ohio and conducts substantial business in this District.

12. At all relevant times, Defendant The North Side Bank & Trust Company ("North Side") is an Ohio corporation. North Side provides financial services and offers saving and checking accounts, credit cards, personal and business loans, and wealth management services. North Side is headquartered in Cincinnati, Ohio and conducts substantial business in this District.

13. In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

14. Plaintiffs are unaware of the names, identities or capacities of the Defendants sued as Doe Lenders 1 to 4,975, but are informed and believe and thereon allege that such fictitiously-named defendant is responsible in some manner for the damages and abridgment of rights described in this Complaint. Plaintiffs will amend this Complaint to state the true names, identities, or capacities of such fictitiously-named defendants when ascertained.

## JURISDICTION AND VENUE

15. The Court has original jurisdiction over this Action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the

proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

16. This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in Ohio.

17. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims occurred in this District given that Plaintiffs applied for the PPP loans while in this District and Defendants marketed, promoted, and took applications for the PPP loans in this District.

## **BACKGROUND**

18. On January 21, 2020, the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus, also known as COVID-19.

19. On January 30, 2020, the World Health Organization ("WHO") declared the coronavirus outbreak to be a "public health emergency of international concern."

20. On March 11, 2020, the WHO declared that the spread of COVID-19 had become a pandemic.

21. On March 22, 2020, Governor Mike DeWine issued an executive Stay at Home Order in the State of Ohio to prevent the spread of COVID-19.

22. On March 25, 2020, in response to the economic damage perpetrated by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, also known as the CARES Act. The CARES Act was passed by the House the following day and signed into law by President Trump on March 27,

2020. This legislation included $337 billion in federally-funded loans to small businesses and a $500 billion governmental lending program.

23. As part of the CARES Act, the Federal Government created a $349 billion loan program, as referred to as the "Paycheck Protection Program" ("PPP") for small businesses, with funds available for loans/grants originated from February 15 through June 30, 2020. The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payroll. The loans are backed by the United States Small Business Administration ("SBA"). The SBA is a United State government agency that provides support to entrepreneurs and small businesses. Although the loans are backed by the Federal Government and SBA, private banks administer the loans.

24. The United States Department of the Treasury announced on April 3, 2020 that small businesses and sole proprietors could apply for and receive loans to cover their payroll and other expenses through SBA lenders (the "Lenders"). Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well.[1]

25. On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added an additional $310 billion in PPP funding, bringing the total PPP funds available to $659 billion.

26. Under the United States Department of the Treasury's PPP Information Sheet Lenders ("PPP ISL"), guidance is provided that Lenders will be compensated for

---

[1] https://home.treasury.giv/system/files/136/PPP- - Fact-Sheet.pdf.

processing fees based on the balance of the financing at the time of final disbursement.[2] SBA will pay Lenders fees for processing PPP loans in the following amounts:

- Five (5) percent for loans of not more than $350,000.00;
- Three (3) percent for loans of more than $350,000 and less than $2,000,000; and
- One (1) percent for loans of at least $2,000,000.[3]

27. The PPP ISL not only includes compensation for Lenders, but also for agents. "An 'Agent' is an authorized representative and can be:

- An attorney;
- An accountant;
- A consultant;
- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;
- Someone who assists a lender with originating, disbursing, servicing, liquidating or litigating SBA loans;
- A loan broker; or
- Any other individual or entity representing an applicant by conducting business with the SBA."[4]

28. Additionally, PPP ISL guidance provides that, "Agent fees **will** be paid out of lender fees. The lender **will** pay the agent. Agents may not collect any fees from the

---

[2] https://home.treasury.gov/system/files/136/PPP%20Information%20Fact%20Sheet.pdf.

[3] *Id.*

[4] *Id.*

applicant. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP"[5] loan is as follows:

- One (1) percent for loans of not more than $350,000;
- 0.50 percent for loans of more than $350,000 and less than $2 million; and
- 0.25 percent for loans of at least $2 million.

29. As mentioned above, the PPP ISL established limits on agent fees. The SBA Regulations and Treasury Guidance determined that the agent fee limits set forth above are reasonable based upon the application requirements and the fees that Lenders receive for making PPP loans.

30. Within this context, Defendants served as the intermediary between small businesses and federal funds. Plaintiffs served as the Agent for the small businesses applying for the PPP loans with the Defendants.

31. Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses, yet Defendants failed to issue compensation to Plaintiffs (or "Agents") that facilitated the loan process between Lenders and applicants.

32. Defendants are refusing to pay or are willing to pay only a partial percentage of the monies owed to Agents.

33. As calculated on Attachment A, Plaintiffs, on behalf of themselves and the proposed Class (as defined below), seek $3,848,597,082.00 to be set aside pro-rata by the banks for distribution to a designee of the borrower of the PPP loan.

---

[5] *Id. (Emphasis added).*

**FACTUAL ALLEGATIONS**

34. On or about March 25, 2020, Plaintiffs became aware that the CARES Act had been signed into law. Plaintiffs, knowing that the COVID-19 crisis would seriously impact their clients' businesses, sought to obtain a PPP loan through various Lenders on behalf of their clients.

35. Each Plaintiff spent between 50-100 hours familiarizing itself with the Act, and, in particular, Section 1102, which temporarily permits SBA to guarantee 100% of 7(a) loans under PPP and Section 1106, which provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the "Paycheck Protection Program."

36. In or about April 2020, Plaintiffs assisted their clients in the gathering and analysis of their documents, as well as the calculation and preparation of their Applications.

37. Based on PPP ISL, Plaintiffs understood that they were not allowed to charge their clients a fee relating to the Application and that the only compensation they would receive would be the mandated Agent fees.

38. Plaintiffs spent between two (2) and ten (10) hours on each application, depending on the complexity of the client and the amount of available data.

39. To fill out the Applications, Plaintiffs assisted clients in gathering the required information and filling out the applications, including the following documents, if applicable:

    a. Loan Calculator Spreadsheet;

    b. SBA Form 2483 – Each Owner 20% or more or Officer;

  c. Addendum A:  Affiliates – Each Owner 20% or more must complete;

  d. Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

  e. Certificate of Beneficial Ownership Interest – Each Owner 20% or more must complete;

  f. Driver's License for each 20% or more Owner;

  g. Articles of Incorporation or Articles of Organization;

  h. 2019 IRS/State Payroll Forms:  940 or all four quarterly 941;

  i. 2019 Payroll Summary Report by Employee;

  j. 2019 Health Insurance Premium Paid – Each monthly statement or year-end summary;

  k. 2019 Retirement Matching Plan Paid – Each monthly statement or year-end summary;

  l. 2020 1st QTR 941 Form;

  m. January 2020 Payroll Summary by Employee;

  n. February 2020 Payroll Summary by Employee;

  o. March 2020 Payroll Summary by Employee;

  p. Health Insurance Premium Paid – January, February, and March 2020;

  q. Retirement Matching Plan Paid – January, February, and March 2020;

  r. Wiring Instruction; and

  s. Copy of most recent Business Bank Statement (collectively, letters a – r, above, may herein be referred to as the "Application").

40. In most instances, the Application had to be amended or redone at least once as the SBA or the Lenders changed the forms, added new documentation and addendum requirements, or admittedly refused to compensate the mandated Agent fees. Plaintiffs spent additional hours making the required changes, and, in some cases, resubmitted the entire Application because Defendants required Plaintiff to do so or because Defendants outright refused to compensate Plaintiffs.

41. Plaintiffs believed in good faith that they would receive the Agent fees from the Lenders upon funding of their clients' Applications.

42. On information and belief, Defendants did not comply with the SBA or Treasury Regulations in distributing PPP funds. Instead, Defendants either retained all of the Agent Fees or stated that they would only pay to the Agent 50% of the required fees.

43. As a result of the conduct of Defendants, Plaintiffs suffered financial harm, wrongfully lost the opportunity to collect compensation during unprecedented economic times, and generally lost economic opportunities to conduct business due to decreased operating capital.

## CLASS ACTION ALLEGATIONS

44. As noted above, Plaintiffs bring this action on behalf of themselves and all others similarly situated as a state and nationwide Class, defined as indicated below.

45. Plaintiffs seek to represent a Class composed of and defined as follows:

  a. All agents as defined by the SBA Regulations that facilitated small businesses to receive a loan under the PPP, i.e., met the criteria for

eligibility and were not otherwise ineligible, between February 15 and June 30, 2020, who timely applied for a PPP loan through various lenders and were processed and approved for funding;

    b.    An "Agent" as defined by the SBA is as follow:

        i.    an attorney,

        ii.    an accountant,

        iii.    a consultant,

        iv.    someone who prepared an applicant's application for financial assistance and is employed and compensated by applicant,

        v.    someone who assists a lender with originating, disbursing, servicing, liquidating or litigating SBA loans,

        vi.    a loan broker, or

        vii.    any other individual or entity representing an applicant by conducting business with the SBA.

46.    Plaintiffs reserve the right to expand, limit, modify or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiffs' motion for class certification, or any other time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

47.    *Numerosity*:  The Class is composed of thousands of Agents (the "Class Members") whose joinder in this action would be impracticable.  The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

48. *Commonality*: There is a well-defined community of interest in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

    a. Did Defendants comply with all applicable SBA Regulations in processing Applications for PPP funds and distributing PPP funds?

    b. Did Defendants comply with their legal obligations under the terms of the CARES act as a lender of the PPP funds?

    c. Did Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class?

    d. Did Defendants prioritize their origination fees over abiding by the CARES Act and PPP specifications?

    e. Did Defendants possess exclusive knowledge of material facts with respect to the Application process, i.e., that the Agents were not receiving compensation when assisting applicants with PPP loan process?

    f. Did Defendants actively conceal a material fact or facts from the Plaintiffs, i.e., that the Agents were not going to receive their earned fees from assisting with the Applications?

    g. Whether Defendants' conduct, as alleged herein, was intentional and knowing.

    h. Whether Class Members are entitled to damages and/or restitution and, if so, what is the amount of revenues and/or profits

        Defendants received and/or was lost by Class Members as a result of the conduct alleged herein?

    i.    Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agents their earned fees under the CARES Act.

    j.    Whether Plaintiffs and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest, and costs of suit.

49. *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiffs and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiffs' and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

50. *Typicality*: Plaintiffs' claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiffs and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal bases of Defendants' liability to Plaintiffs and each Class Member as a result of Defendants' actions are described herein.

51. *Adequacy*: Plaintiffs are adequate representatives of the Class because they are members of the Class, and Plaintiffs' interests do not conflict with the interests

of the other Class Members that Plaintiffs seek to represent. Plaintiffs will fairly and adequately represent and protect the interests of the other Class Members. Plaintiffs have retained counsel with substantial experience in litigating complex cases, including Consumer fraud and class actions. Both Plaintiffs and their counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiffs nor counsel have any interest adverse to other Class Members.

52. *Ascertainability*: Plaintiffs are informed and believe that Defendants keep extensive computerized records of their loan applications through, inter alia, computerized loan application systems, and Federally-mandated record keeping practices. Defendants maintain one or more databases identifying 100% of their PPP borrowers' (the "Borrowers") contact information, including email and mailing addresses (the "Borrowers' Contact Information"). Through the use of the Borrowers' Contact Information, a significant majority of the Class Members, if not 100% of the Class Members, may be identified and ascertained, allowing the dissemination of notice of this action in accordance with due processes requirements.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**On Behalf of the Class**
**Against All Defendants**

**(DECLARATORY RELIEF)**

53. Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

54. Plaintiffs assert this cause of action on behalf of themselves and other Class Members as Agents as defined herein.

55. As previously alleged, Plaintiffs assisted their clients with the application process. Defendants failed to pay Agent fees owed to Plaintiffs as required by SBA regulations and instead kept all of the origination and processing fees for themselves, in direct violation of PPP ISL.

56. An actual controversy has arisen between Plaintiffs and Defendants as to the Agent fees owed to Plaintiffs by Defendants, and on information and belief, Defendants either deny that any Agent fees are owed to Plaintiffs, or that only a percentage of the Agent fees are owed to Plaintiffs.

57. Plaintiffs and the Class Members seek a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan. The calculations in support of this 19.14% are shown in Attachment A.

**SECOND CAUSE OF ACTION**
**On Behalf of the Class**
**Against All Defendants**

**(UNJUST ENRICHMENT)**

58. Plaintiffs hereby incorporate by reference the foregoing allegations as if fully set forth herein.

59. Plaintiffs assert this cause of action on behalf of themselves and all Class Members.

60. Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent fees owed to Plaintiffs and the Class.

61. Defendants have unjustly benefitted through the unlawful and wrongful collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiffs and Class Members.

62. Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiffs. Therefore, Plaintiffs seek disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seek restitution for the benefit of the Plaintiffs and Class Members, equitably and efficiently to be determined by the Court.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

1. For an Order certifying the Class as defined above, appointing Plaintiffs as Class representatives for the Class, and appointing Plaintiffs' counsel as Class counsel for the Class;

2. For an Order declaring Defendants' actions to be unlawful;

3. For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan. The calculations in support of the 19.14% are shown on Attachment A.;

4. For equitable relief to Plaintiffs and Class Members;

5. For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and Class Members, including disgorgement, unjust enrichment, and all other available relief under applicable law;

6. For an award of punitive damages pursuant to applicable law;

7. For reasonably attorney's fees and expenses as permitted by applicable statutes and law;

8. For taxable costs;

9. For pre and post-judgment interest as allowed by law; and

10. For any other relief the Court deems just.

Respectfully submitted,

*/s/ Matthew E. Stubbs*
MATTHEW E. STUBBS (0066722)
G. TODD HOFFPAUIR (0064449)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
(513) 768-5238 / thoffpauir@mojolaw.com
(513) 768-5227 / mstubbs@mojolaw.com
Fax:    (513) 768-5238

MICHAEL E. ADLER (Cal Bar 236115)
*Pro Hac Vice Motion Pending*
GRAYLAW GROUP, INC.
26565 Calabasas Road, Suite 102-127
Calabasas, California 91302
Tel:    (818) 532-2833
Fax:    (818) 532-2834
meadler@graylawinc.com

        MARK J. GERAGOS (Cal Bar 108325)
*Pro Hac Vice Motion Pending*
BEN J. MEISELAS (Cal Bar 277412)
*Pro Hac Vice Motion Pending*
GERAGOS & GERAGOS
Historic Engine Co. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411
Tel:    (213) 625-3900
Fax:    (213) 232-3255
mark@geragos.com
ben@geragos.com

HARMEET K. DHILLON (Cal Bar 207873)
*Pro Hac Vice Motion Pending*
NITOJ P. SINGH (Cal Bar 265005)
*Pro Hac Vice Motion Pending*
DHILLON LAW GROUP INC.
177 Post Street, Suite 700
San Francisco, California 94108
Tel:    (415) 433-1700
Fax:    (415) 520-6593
harmeet@dhillonlaw.com
nsingh@dhillionlaw.com

*Attorneys for Plaintiffs and the Proposed Class*


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of its claims by jury to the extent authorized by law.


        */s/ Matthew E. Stubbs*
        MATTHEW E. STUBBS